Wilkins, Douglas H., J.
Kirk Fernette, an inmate at the Massachusetts Correctional Institution at Norfolk (“MCI Norfolk”) has filed this action in the nature of mandamus against the Commissioner of the Department Correction (“DOC”) seeking an order compelling DOC to comply with certain regulations of the Massachusetts Department of Public Health. The parties have filed cross motions for summary judgment. After hearing and upon review of the papers, DOC’s motion for summary judgment is ALLOWED. The Plaintiffs Motion for summary judgment is DENIED.
BACKGROUND
The plaintiff is currently incarcerated at MCI-Norfolk.[2] From November 26, 2007 until July 25, 2008 (and not thereafter), he was housed in the Probationary Housing Unit 1 (“P-1”) at MCI-Norfolk. On July 25, 2008, he was moved from the P-1 Housing Unit to the 8-2 Housing Unit. On September 9, 2008, he was moved to the 3-3 Housing Unit, where he has remained since that time.
The Probation Units at MCI-Norfolk contain living and sleeping quarters, satellite feeding areas for the same number of inmates and lavatory and bathing facilities, all for approximately 104 inmates. These various uses are “commingled in open floor, dormitory style settings.” There are no self-closing, tight-fitting doors to separate the feeding areas from the lavatory and bathing areas or from the sleeping quarters. DOC has no permits for the assembly or gathering of persons for the purpose of consuming food or drink in the Probation Units.
The Department of Public Health has promulgated Required Minimum Sanitation Standards for Food Establishments within the Correctional Facilities of the Commonwealth. 105 CMR 451.000, 590.000. The U.S. Food and Drug Administration has promulgated its 1999 Food Code and Annex, applicable to the correctional facilities of the Commonwealth. The plaintiff alleges that the defendant is aware of violations of these requirements, but refuses to act upon them or perform his specific obligations and duties to comply with them.
DISCUSSION
While the Motion seeks dismissal under Mass.R.Civ.P. Rule 12(b)(6), it requests summary judgment in the alternative. The plaintiff has treated the motion as a summary judgment motion. See Opposition, pp. 1-2 n.l. The Court does the same, as no party will be prejudiced by doing so. In any event, the motion to dismiss for lack of jurisdiction is really a Rule 12(b)(1) motion, on which materials outside the *171 pleadings would be admissible. Ginther v. Commissioner of Insurance, 427 Mass. 319, 322 n.6 (1998).
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The moving party bears the burden of showing affirmatively that no triable issue of fact exists. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). It may meet that burden by showing that “the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis, 410 Mass. at 716.
I.
DOC first argues that the case is moot, because the plaintiff has not lived in the P-1 Unit since July 25, 2008, having lived there for a total of eight months prior to that date. The plaintiffs principal response is that, while he has not been in the P-1 unit for several years, he may nevertheless bring an action in the nature of mandamus under G.L.c. 249, §5 to enforce a public right. He relies upon Green v. Board of Appeals of Provincetown, 26 Mass.App.Ct. 469, 474 (1988), rev’d, 404 Mass. 571 (1989), and cases cited. While he succeeds in calling attention to the principal authorities addressing the issue, the Court reads those authorities as supporting dismissal on jurisdictional grounds.
One significant problem for the plaintiff is that the Supreme Judicial Court reversed the Appeals Court’s decision in Green. Green v. Board of Appeals of Provincetown, 404 Mass. 571 (1989). The Supreme Judicial Court stated that:
In fact, G.L.c. 40A appears to recognize the distinction between a right of a nonaggrieved person to seek enforcement (see §7) and the greater right of an aggrieved person to start an administrative proceeding seeking to compel enforcement (see §8). Id., 404 Mass. at 573. While the Court was discussing c. 40A, its language suggests that the distinction between seeking and compelling enforcement has a broader, preexisting reach. Applying that rule, the plaintiff had a right to request enforcement of the regulations by DPH and DOC, but cannot seek to compel enforcement without standing in his own right.
Another problem for the plaintiff is that Green and the cases it cited are zoning enforcement cases. Those cases cannot simply be extended to the corrections context. “The public right doctrine cannot be invoked for broad purposes . . . and, although officials ‘are obligated to obey the law . . . that obligation, without more, is not a sufficient ground for action by persons who are not injured.’ . . . The public right doctrine has always been limited to the enforcement of clear and unequivocal duties, such as” certain elections questions and unlawful issuance of a building permit. Perella v. Massachusetts Turnpike Authority, 55 Mass.App.Ct. 537, 540 (2002), quoting Kaplan v. Bowker, 333 Mass. 455, 460, 461 (1956).
The generally applicable principle, which governs here, is as follows:
Where a plaintiff seeks mandamus relief, “(t]he question of standing is one of critical significance. ‘From an early day it has been an established principle in this Commonwealth that only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of a coordinate branch of the government.’ ” Tax Equity Alliance for Mass. v. Commissioner of Rev., 423 Mass. 708, 715 (1996), quoting from Doe v. The Governor, 381 Mass. 702, 704 (1980). Ordinarily, “(a)lleging ‘[i]njuiy alone is not enough; a plaintiff must allege a breach of duty owed to [him] by the public defendant.” Injuries that are speculative, remote, and indirect are insufficient to confer standing. “Not every person whose interests might conceivably be adversely affected is entitled to (judicial review. Moreover, the complained of injury must be a direct consequence of the complained of action. To have standing in any capacity, a litigant must show that the challenged action has caused the litigant injury.’ ” (Citations omitted.) Ginther, 427 Mass. at 323.
Perella 55 Mass.App.Ct. at 539. The plaintiff does not meet this test, because his claim for injunctive relief is moot.
The parties agree that the plaintiff has not been housed in the P-1 unit since July 25, 2008. There is no record evidence suggesting that he is threatened with placement in the P-1 Unit. “Litigation is considered moot when the party who claimed to be aggrieved ceases to have a personal stake in its outcome.” Blake v. Massachusetts Parole Board, 369 Mass. 701, 703 (1976). It is true that moot case may be heard when the alleged injuries are capable of repetition, yet evade review. Id. at 708. However, in this case, no evidence suggests that placements in the P-1 unit are too short to evade review; the plaintiffs own placement was for 8 months, but he did not file suit until September 16, 2008, nearly two months after his transfer. Eight months should ordinarily be sufficient time to file suit and at least request preliminary relief. Nor is there any evidence that the plaintiff will be returned to the P-1 unit. In the circumstances, the “capable of repetition yet evading review” exception does not apply. See Filson v. Superintendent, Massachusetts Correctional Inst., Norfolk, 942 N.E.2d 208, 79 Mass.App.Ct. 1102 (2011) (1:28 Order); Reed v. Horgan, 917 N.E.2d 260, 75 Mass.App.Ct. 1115 (2009) (Rule 1:28 Order) (“Here the plaintiff is no longer in a cell without a toilet and running water and, therefore, the claim set out in count one is moot”).
*172 II.
The case might still go forward if there were a viable claim for damages. As to that aspect of the claim, DOC is correct that the plaintiff cannot proceed in the absence of proof that the Legislature intended a private right of action for damages arising out of violation of the agency’s regulation. Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 546-47 (1998). See also Borucki v. Ryan, 407 Mass. 1009 (1998) (rescript); Hudson v. Commissioner of Correction, 46 Mass.App.Ct. 538, 548 n.18 (1999) (plaintiff failed to show that violation of DPH regulations created a private right of action), aff d on other grounds, 431 Mass. 1 (2000); Martino v. Hogan, 37 Mass.App.Ct. 710, 720-21 (1994) (DPH regulations do not create personal liability for officials alleged to have violated them). The plaintiff has not shown any evidence of a legislative intent to create a private right of action for damages for violation of the DPH regulations he cites.
I do not rely upon Loffredo — which sought relief against a private party — or upon its rules regarding private causes of action, as a basis for dismissing the plaintiffs injunctive claims against DOC itself. It would be hard to do so and still remain faithful to the principle, discussed above, that a person has standing if he or she has suffered or is threatened with legal harm from DOC’s violation of a binding regulation. However, since the plaintiff has not standing to sue for injunctive relief and has no private right of action for damages, the case must be dismissed as to DOC.
III.
The plaintiff stresses that he seeks summary judgment only against DOC, not the other two defendants. However, the question of standing is jurisdictional and may be raised by the Court sua sponte. See, e.g. Ginther, 427 Mass. at 322. The parties have already addressed the standing issue, and it is clear that the plaintiff has suffered no more injury at the hands of DPH or the State Board of Building Inspection than at the hands of DOC. Indeed, the latter two defendants are enforcement agencies, and have wide discretion whether or not to take enforcement action. See Van Scoyoc v. Board of Health of Sherborn, 4 Mass.App.Ct. 97, 101 (1976) (under G.L.c. Ill, §§127A, 127B, “(t]here is no requirement that the board of health take action against every person who has contributed to the creation of an unsanitary condition. The board has discretion not only as to whom it will proceed against but also as to which of the several enforcement methods it may employ.”). See also Tri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 225-26 (2001). Cf. Shepard v. Attorney General, 409 Mass. 398 (1991). The Courts have upheld a “reasonable” interpretation of statutes and regulations by administrative agencies in the context of setting enforcement policy and fashioning remedies. Boston Preservation Alliance, Inc. v. Sec’y of Env. Affairs, 396 Mass. 489, 498 (1986). In light of these principles; there is no live controversy concerning any of the defendants. Because all parties had sufficient notice to permit full briefing of all dispositive issues, summary judgment against the plaintiff as to all parties is appropriate. See Langton v. Commissioner of Correction, 34 Mass.App.Ct. 564, 575-76 (1993).
CONCLUSION
For the above reasons, the Court Orders that:
1. Defendants’ Motion for Summary Judgment is ALLOWED.
2. Plaintiffs Cross-Motion for Summary Judgment is DENIED.
3. Judgment shall enter for all defendants dismissing the complaint as moot.

As the plaintiff points out, the length of, or reasons for, the sentence are not material to the Motion. Indeed, there are no issues of credibility on a summary judgment motion. As a general matter, all inmates have the same rights regarding the conditions of their incarceration, notwithstanding their particular sentences or crimes.