ENGLANDER, J.
In this case, we consider whether Andrea Tortolano, a State employee, can bring claims in the Superior Court against Lemuel Shattuck Hospital (hospital or defendant)[1] for breach of contract and for nonpayment of overtime wages in violation of G. L. c. 149, § 30B.[2] The motion judge (1) dismissed Tortolano's breach of contract claim on the ground that she failed to exhaust the grievance procedure set forth in the applicable collective bargaining agreement (CBA), and (2) dismissed the nonpayment of overtime wages claim on the ground that there is no private right of action for violations of § 30B. For the reasons that follow, we affirm.
Background. We summarize the relevant facts as set forth in the amended complaint, reserving some details for further discussion. See Dartmouth v. Greater New Bedford Regional Vocational Technical High Sch. Dist., 461 Mass. 366, 368, 961 N.E.2d 83 (2012). On February 4, 2008, Tortolano starting working as a physician's assistant at the hospital. Her employment was governed by the CBA between the Commonwealth and the Massachusetts Nurses Association, State Chapter of Health Care Professionals, Unit 7 (union). Pursuant to the CBA, Tortolano was entitled to time and one-half overtime pay for work performed in excess of forty hours per week, including for time spent "on call" while at home. The CBA also set *519 forth a grievance procedure for resolving disputes between an employee and the employer.
In the fall of 2014, Tortolano's union representative filed three grievances on her behalf with the hospital. One of those grievances alleged that the hospital had failed to pay her for time spent "on call" while at home. The hospital did not take any action on any of the grievances. Thereafter, Tortolano did not take any further steps in the grievance process.
Instead, Tortolano filed a complaint against the hospital with the Attorney General, alleging, among other things, nonpayment of wages and overtime pay violations. In response, the Attorney General's office sent Tortolano a letter dated November 23, 2015, which stated that it had "carefully reviewed the complaint," and that it had "determined that the proper resolution of this matter may be through a private suit in civil court." The letter stated that G. L. c. 149, § 150, and G. L. c. 151, §§ 1B and 20, "establish a private right of action for employees who believe they are victims of certain violations of the state wage laws." The letter concluded that it represented "written assent to sue and grant[ed Tortolano] the authority to pursue this matter against the employer ... as permitted by [G. L. cc.] 149 and 151." Finally, the Attorney General's office stated that it would "not take further enforcement action at this time."
Tortolano commenced this action in December of 2015. The original complaint contained four counts against the hospital, alleging violations of G. L. c. 149, §§ 148 and 150 (failure to pay wages) (count 1); G. L. c. 151, § 1A (failure to pay overtime wages) (count 2); G. L. c. 151, § 15 (failure to keep accurate payment records) (count 3); and breach of contract (count 4). After the defendant filed an initial motion to dismiss, Tortolano amended her complaint to add a fifth count, invoking G. L. c. 149, § 30B.
There were two successive motions to dismiss filed with respect to Tortolano's claims. In ruling on the first motion, the judge dismissed the first three counts of Tortolano's complaint, relating to purported violations of the Commonwealth's wage laws other than G. L. c. 149, § 30B.[3] The judge denied the hospital's motion with respect to the breach of contract claim, however, accepting Tortolano's allegations that she had exhausted her administrative remedies by filing a complaint with the Attorney General's office, and that the hospital had repudiated or nullified the CBA by ignoring her grievances.
After Tortolano amended her complaint to add the § 30B claim, the hospital filed a second motion to dismiss. As to Tortolano's breach of contract claim, the hospital this time attached the sections of the CBA setting forth the grievance procedure. The hospital urged that Tortolano had failed to exhaust that procedure, because under the CBA she could have, but did not, continue to pursue her grievances after the hospital failed to respond to her initial filings. The hospital also moved to dismiss the newly added fifth count of Tortolano's amended complaint, on the ground that there is no private right of action to enforce G. L. c. 149, § 30B. In a decision dated January 20, 2017, the judge accepted the hospital's arguments and dismissed both the § 30B and contract claims. Judgment entered for *520 the hospital, and the present appeal followed.
Discussion. 1. Standard of review. In reviewing the allowance of a motion to dismiss under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), we accept the factual allegations in a plaintiff's complaint, and any favorable inferences reasonably drawn therefrom, as true. See Ginther v. Commissioner of Ins., 427 Mass. 319, 322, 693 N.E.2d 153 (1998). Our review is de novo. See Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676, 940 N.E.2d 413 (2011). "[W]e look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief." Ibid. See Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-636, 888 N.E.2d 879 (2008).
2. Breach of contract. Tortolano contends that the judge erred in dismissing her breach of contract claim on the ground that she failed to exhaust the grievance procedure in the CBA. There was no error.[4]
In general, where a collective bargaining agreement includes a grievance procedure, "failure to pursue contractual grievance procedures bars suit against the employer." Johnston v. School Comm. of Watertown, 404 Mass. 23, 25, 533 N.E.2d 1310 (1989). See O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 695, 664 N.E.2d 843 (1996). "Employees may not simply disregard the grievance procedures set out in a collective labor contract and go direct to court for redress against the employer." Balsavich v. Local 170, Intl. Bhd. of Teamsters, 371 Mass. 283, 286, 356 N.E.2d 1217 (1976).
Section 25.2 of the CBA sets forth a four-step grievance procedure for resolving disputes under the CBA. The first step is for an employee or the union to submit a written grievance to the hospital, which, in turn, shall provide a written response to the grievance within seven days. If either the employee or the union is dissatisfied with the grievance decision, the CBA provides, in steps 2 and 3, for two more appeals within the hospital, after which arbitration may be invoked. Importantly, section 25.6 of the CBA further provides that if the hospital exceeds any time limit for responding, the employee or the union may assume that the grievance has been denied and may invoke the next step of the procedure, except that only the union may request arbitration in the fourth step.
Here, the grievance procedure was never exhausted because neither Tortolano nor the union proceeded beyond step 1. Pursuant to the CBA's express terms, when the hospital did not respond to Tortolano's grievances within the prescribed time period, the grievances were deemed denied, and either Tortolano or the union was permitted to invoke the second step of the process. Tortolano could have done so, without the union's involvement. Rather *521 than continue with the grievance process, however, Tortolano brought this lawsuit.
This case accordingly is controlled by Johnston, 404 Mass. at 24-25, 533 N.E.2d 1310. In that case, the court considered whether an employee's failure to pursue contractual grievance procedures when faced with union inaction barred a breach of contract claim against his employer. There, the union refused to represent the employee in pursuing his claim for overtime pay because the union determined that the claim lacked merit. The court stated that, even if it assumed that the union had failed to fulfil its duty of fair representation, the employee had the right, under the collective bargaining agreement, to pursue his grievance independent of the union. Given that the employee had not fully complied with the agreement's grievance procedure, he could not pursue his contract claim against the employer in court. See ibid. Moreover, the Johnston court made clear that, except in limited circumstances not present here, any claim by the public employee against the union for breach of the duty of fair representation must be presented first to the Labor Relations Commission (now the Department of Labor Relations, see G. L. c. 150E, § 11, as amended through St. 2011, c. 3, §§ 141-143), not to a trial court. See id. at 26-27, 533 N.E.2d 1310.
Johnston thus establishes that Tortolano's contract claim must be dismissed. The grievance procedure was not exhausted before this suit was filed. Although this case differs from Johnston in that here the union invoked the first step of the grievance procedure, Tortolano could have progressed through the next two steps without the union's involvement, and Tortolano does not allege or argue that she was inhibited from doing so. Moreover, even if the union was at fault for the failure to exhaust, Tortolano's remedy was to seek relief from the Department of Labor Relations, before resorting to the courts. See ibid. She did not do so.
Finally, Tortolano cannot avoid the grievance process by pointing to the inaction of the employer. The CBA expressly contemplated such inaction, by providing that the employer's failure to respond constituted a denial of the grievance, thereby permitting the employee to move forward in the process. The hospital's unresponsiveness to Tortolano's grievances therefore did not constitute a repudiation or nullification of the grievance machinery -- she needed to continue pursuing the grievance procedure set forth in the CBA. See Balsavich, 371 Mass. at 286, 356 N.E.2d 1217 ; Azzi v. Western Elec. Co., 19 Mass. App. Ct. 406, 408-409, 474 N.E.2d 1166 (1985).
3. Violation of G. L. c. 149, § 30B. Tortolano next contends that the motion judge erred in ruling that she had no private right of action under G. L. c. 149, § 30B. She asserts that the statute must be broadly construed to effectuate its purpose of protecting the right of public employees to overtime wages. See generally Crocker v. Townsend Oil Co., 464 Mass. 1, 13, 979 N.E.2d 1077 (2012) ("[T]he legislative purpose behind the Wage Act ... is to provide strong statutory protection for employees and their right to wages"). Moreover, Tortolano argues that the letter she received from the Attorney General's office authorized her to file this suit, thereby in essence conferring upon her a private right of action. The judge did not err in dismissing this claim.
There is no express private right of action for violations of G. L. c. 149, § 30B, so the question is whether one should be inferred in light of the statutory scheme and the Legislature's purpose and intent. See *522 Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 543, 689 N.E.2d 799 (1998). See also Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 373, 893 N.E.2d 1187 (2008). The touchstone is the intent of the Legislature. In evaluating intent, one important consideration is what enforcement provisions are set forth in the statute itself. See ibid.
With respect to c. 149, the general enforcement power is vested in the Attorney General:
"The attorney general shall, except as otherwise specifically provided, enforce the provisions of this chapter, and shall have all necessary powers therefor" (emphasis added).
G. L. c. 149, § 2, as amended by St. 1996, c. 151, § 368. Importantly, there are several provisions of c. 149 that grant express private rights of action for violations of certain sections of the statute, but none that provide a right of action with respect to § 30B. See, e.g., G. L. c. 149, § 27 (employee aggrieved by violation of prevailing wage law may initiate civil action after filing complaint with Attorney General); G. L. c. 149, § 150, as amended through St. 2014, c. 505, § 2 (employee aggrieved by violation of G. L. c. 149, §§ 33E, 52E, 148, 148A, 148B, 148C, 150C, 152, 152A, 159C, or 190, or by violation of G. L. c. 151, § 19, may "institute and prosecute in his own name and on his own behalf ... a civil action for injunctive relief, for any damages ... , and for any lost wages" after filing complaint with Attorney General); G. L. c. 149, § 185(d ) (employee subject to retaliation may institute civil action in Superior Court).
The question here is in large part controlled by the reasoning in Salvas, 452 Mass. at 372-373, 893 N.E.2d 1187, which held that there is no private right of action under another section of c. 149 -- § 100 (requiring meal breaks for employees). As Salvas points out, the many express private rights of action in c. 149 demonstrate that the Legislature knows how to confer a private right of action when it so intends, and the c. 149 provisions are a strong indication that no further private rights of action should be inferred. See id. at 373, 893 N.E.2d 1187. Moreover, the Massachusetts courts are "reluctant to infer a private cause of action from a statute in the absence of some indication from the Legislature supporting such an inference." Loffredo, 426 Mass. at 544, 689 N.E.2d 799. See Transamerica Mort. Advisors, Inc. v. Lewis, 444 U.S. 11, 19, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it"). The express language of G. L. c. 149, § 2, authorizing enforcement of c. 149 by the Attorney General unless otherwise specifically provided, coupled with the granting of private rights of action in certain sections of c. 149, but none encompassing § 30B or in § 30B itself, signifies that the provisions of § 30B can be enforced only by the Attorney General. See Salvas, 452 Mass. at 373, 893 N.E.2d 1187 ; Mello Constr., Inc. v. Division of Capital Asset Mgmt., 84 Mass. App. Ct. 625, 629-630, 999 N.E.2d 1091 (2013).
Finally, we turn to the matter of the letter from the Attorney General's office. Tortolano's argument in this court -- that the letter conferred on her the right to bring an action in her own name under G. L. c. 149, § 30B -- was not raised in either her amended complaint or in her opposition to the hospital's motion to dismiss the fifth count of that complaint.[5]
*523 Accordingly, this argument was waived. See Palmer v. Murphy, 42 Mass. App. Ct. 334, 338, 677 N.E.2d 247 (1997). See also Carey v. New England Organ Bank, 446 Mass. 270, 285, 843 N.E.2d 1070 (2006).
Even if it had been properly raised, however, the argument would fail. As indicated, under the statutory scheme, the authority to enforce G. L. c. 149, § 30B, rests with the Attorney General. See G. L. c. 149, § 2. Tortolano asserts that the Attorney General's letter passed the enforcement power on to her, but we do not agree. First, the letter did not appoint Tortolano, or her counsel, to act as a special assistant attorney general, working on behalf of and subject to the Attorney General's control. See generally G. L. c. 12, § 3 (attorney general shall appear for Commonwealth, and "[a]ll such suits and proceedings shall be prosecuted or defended by [her] or under [her] direction"); New England Div. of the Am. Cancer Soc. v. Commissioner of Admin., 437 Mass. 172, 173 n.5, 769 N.E.2d 1248 (2002). Indeed, the suit is not brought on behalf of the Commonwealth -- Tortolano is the named plaintiff.
Second, while the letter does authorize Tortolano to bring a private right of action under some sections of c. 149, the Attorney General was without power to confer such a private right of action with respect to § 30B. Where, as discussed above, the Legislature has not provided a private right of action, the Attorney General cannot create an alternative enforcement mechanism by unilaterally conferring such a private right of action on an individual.[6] See Local 1445, United Food & Commercial Wkrs. Union v. Police Chief of Natick, 29 Mass. App. Ct. 554, 558, 563 N.E.2d 693 (1990).[7]
Conclusion. For the foregoing reasons, there was no error in the dismissal of the amended complaint.
Judgment affirmed.

The Commissioner of Public Health has "general supervision and control" of Lemuel Shattuck Hospital. G. L. c. 111, § 69E, as appearing in St. 1975, c. 752, § 4.

General Laws c. 149, § 30B, as amended by St. 1960, c. 762, § 1, provides, in pertinent part:
"All service in excess of eight hours in any one tour of duty or forty hours in any one work week rendered by any employee of the commonwealth ... shall be compensated for at the rate of one and one half times the regular hourly rate of said employee for every hour or fraction thereof of such services rendered."

These counts were dismissed because the particular statutory provisions invoked either did not apply to Tortolano or otherwise did not give rise to a claim. For example, G. L. c. 151, § 1A, which provides rights to overtime pay, does not apply to employees of a "hospital." See G. L. c. 151, § 1A(16), as appearing in St. 1969, c. 108. Tortolano does not challenge the motion judge's dismissal of counts 1 through 3.

Contrary to Tortolano's argument, the hospital was not precluded from asking the judge to revisit the legal sufficiency of Tortolano's breach of contract claim. A judge is not precluded from reconsidering a prior decision. See Peterson v. Hopson, 306 Mass. 597, 602, 29 N.E.2d 140 (1940) ("[A] judge may modify a decision already announced, so long as the case has not passed beyond the power of the court"). Matters of case management are within the discretion of the judge. See Eagle Fund, Ltd. v. Sarkans, 63 Mass. App. Ct. 79, 85, 823 N.E.2d 783 (2005). Nor was it incorrect for the judge to consider the portions of the CBA that the hospital attached to its second motion, where the CBA was the basis for the contract claim. See Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 224, 950 N.E.2d 853 (2011), S.C., 466 Mass. 156, 993 N.E.2d 684 (2013) (automobile insurance policy relied on by plaintiff in framing complaint could be attached to motion to dismiss). See also Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 & n.4, 809 N.E.2d 1017 (2004).

Pursuant to G. L. c. 149, § 150, Tortolano did institute a civil action "in [her] own name and on [her] own behalf" for alleged violations of G. L. c. 149, § 148. Section 148, however, states that it "shall not apply to an employee of a hospital which is supported in part by contributions from the commonwealth ... unless such employee requests such hospital to pay [her] weekly." G. L. c. 149, § 148, as appearing in St. 1956, c. 259. Because Tortolano did not request weekly payment of her wages, her claim under § 148 was dismissed, and she has not challenged that determination.

The letter from the Attorney General's office appears to be a form letter that is generated in response to the filing of a complaint for, among other matters, nonpayment of wages. The letter certainly can be misconstrued, however, because it suggests that a claimant can take a course of action to remedy statutory violations which, in fact, may not be available. For example, although the letter can be read as authorizing Tortolano to bring an expedited lawsuit under G. L. c. 149, § 150, which she did, see note 5, supra, it turns out that Tortolano was not eligible for relief under that section. While the Attorney General contended, at argument, that the letter only assents to those lawsuits "permitted by [G. L. c.] 149," such is not the most natural reading of the letter.

We acknowledge that the various provisions of G. L. cc. 149 and 151 combine for a rather unfortunate result in Tortolano's case. The express private right of action under G. L. c. 149, § 150, does not apply to violations of § 30B, and because Tortolano is an employee of a State hospital, she falls outside the protection of other provisions of the statutes.